UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X

KAREEM PROCTOR,                                    **DOCKET NO.: CV-21-5819**

                Plaintiff,

    -*against*-

VILLAGE OF SOUTHAMPTON, SOUTHAMPTON              **COMPLAINT**
VILLAGE POLICE DEPARTMENT, and CHIEF OF
POLICE THOMAS CUMMINGS , in  his individual
and official capacity, and JOHN DOES 1-10, in their
individual and official capacities

              Defendants.              ***JURY TRIAL IS DEMANDED***
--------------------------------------------------------------------- X

     PLAINTIFF, KAREEM PROCTOR by and through his attorneys, the LAW OFFICES OF

FREDERICK K. BREWINGTON, as and for his Complaint,  against the Defendants, states and

alleges as follows:

### PRELIMINARY STATEMENT

     1.     This is a civil action seeking monetary relief (including past and on going economic

loss), compensatory and punitive damages, disbursements, costs and fees for violations of the

Plaintiff's rights, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

et seq. (as amended),  Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq.,  42

U.S.C. §§1981, 1983, and 1988, New York State's Human Rights Law, Executive Law Art. 15.

     2.     Specifically, the Plaintiff alleges that the collective Defendants engaged in

discrimination and retaliation and negligently, wantonly, recklessly, intentionally and knowingly

sought to and did wrongfully deprive Plaintiff of the appropriate employment position, promotions,

transfers and title and pay through acts that were taken against Plaintiff because of his race, color,

and national origin, and opposing discrimination. These acts resulted in misrepresentation, misinformation, harassment, character assassination, negative impact regarding Plaintiff's, humiliation, embarrassment, depravation of job opportunities, permanent injury and harm and other results which continue to mount.

3.      Plaintiff alleges that the collective Defendants, directly acted and/or allowed its agents, employees, representatives and/or officers to act maliciously and unconstitutionally, enacting discriminatory policies, which caused Plaintiff to suffer the following injuries:

- Violations of his various statutory rights, including those protected by Title VII of the Civil Rights Act of 1964, Article 15 of the Executive Law of the State of New York (Human Rights Law) §§ 290 and 296, Suffolk County Human Rights Law, ;

- Violations of his Constitutional rights under the Fourteenth Amendment to the United States Constitution (Fourteenth Amendment) in violation of 42 U.S.C. § 1983, and violations of 42 U.S.C. § 1981;

- Complete, temporary, or partial loss of reputation;

- Loss of benefits, pay, and future income;

- Prolonged alteration of employment and/or temporary/partial alteration of employment opportunities; and

- Diminished capacity, incurring special, monetary, and compensatory damages.

6.      Said acts were done knowingly with the consent and condonation of the VILLAGE OF SOUTHAMPTON, SOUTHAMPTON VILLAGE POLICE DEPARTMENT, and CHIEF OF POLICE THOMAS CUMMINGS , in his individual and official capacity, and JOHN DOES 1-10, in their individual and official capacities with the express purpose of targeting, injuring and silencing the Plaintiff, and generally violating his rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

8.      This Court is requested to exercise pendant jurisdiction with respect to Plaintiff's State law claims pursuant to 28 U.S.C.§ 1367.

9.      Venue in the Eastern District of New York is proper under 28 U.S.C. §1391, based on the fact that Plaintiff resides in Suffolk County, New York and the Defendants are conducting business in the State of New York, specifically Suffolk County.  Upon information and belief the individual Defendants reside in the Eastern District of New York.

10.      On June 2, 2019 Plaintiff dual filed Charge of Discrimination Case No. 10202786 or 10202786-19-E-RO-E against Defendants with the New York State Division of Human Rights (hereinafter "NYSDHR") and Charge of Discrimination Case No. 16GB904398 or 16G-2019-04398 against Defendants with the EEOC asserting his wrongful discrimination due to the Defendants' animus on the basis of Plaintiff's race, color, and national origin and asserting that he has been retaliated against by Defendants after opposing discrimination.

11.      On June 15, 2021, NYSDHR Regional Director Froebel Chungata, issued a "Determination After Investigation" find that "PROBABLE CAUSE exists to believe that the [Defendants] have engaged in or are engaging in the unlawful discriminatory practice complained of.

12.      On July 19, 2021 NYSDHR Commissioner Licha M. Nyiendo issued a Notice and Final Order adopting the Recommended Order of Dismissal for Administrative Convenience, issued on June 30, 2021 by Robert M. Vespoli, Administrative Judge.

13.    On or about August 4, 2021, Plaintiff received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 16G-2019-04398 (copy annexed hereto as Exhibit "A").  As of the filing of this complaint, ninety days from the date of receipt of the Notice of Right to Sue has not yet passed.

## PARTIES

14.    Plaintiff, Kareem Proctor (hereinafter "Plaintiff" or "Proctor" or "Mr. Proctor"), at all times relevant in this Complaint, is a Black-African American male, and is a citizen of the United States of America.  Plaintiff is employed by the Village of Southampton in the Southampton Village Police Department and currently holds the rank Police Officer Plaintiff resides in the County of Suffolk, State of New York.

15.    During all times relevant to this Complaint the Defendant VILLAGE OF SOUTHAMPTON(hereinafter "VILLAGE" or "SOUTHAMPTON") was and is a municipality of the State of New York.   Upon information and belief, the VILLAGE oversees, maintains, manages/supervises, and controls several departments, agencies and employees, including but not limited to, the SOUTHAMPTON VILLAGE POLICE DEPARTMENT, and CHIEF OF POLICE THOMAS CUMMINGS , in his individual and official capacity, and JOHN DOES 1-10. VILLAGE is an employer within the definition of the New York State Executive Law, Title VII, is a public employer and employs well over 15 employees.

16.    VILLAGE  receives and utilizes federal funds and assistance in the conducting of its policing functions within the County of Suffolk.  In its yearly budget, the VILLAGE admits receipt of federal funds.  In the past year, those funds included PPP funds.  Additionally, such funds include but are not limited the funding of the East End Drug Task Force,  Federal Drug and Gang Task Force

and Community Preservation Funds.  These are among some of the Federal funds received by the VILLAGE and SOUTHAMPTON VILLAGE POLICE DEPARTMENT.

17.     During all times relevant in this Complaint the Defendant SOUTHAMPTON VILLAGE POLICE DEPARTMENT (hereinafter "DEPARTMENT" or  "SVPD or "POLICE")is an agency of the VILLAGE and operates under the direction and on behalf of Defendant VILLAGE.

18.      DEFENDANT, THOMAS CUMMINGS (hereinafter "CUMMINGS"), was at all relevant time to this Complaint the Chief of the Southampton Police Department, and retired on or about September 10, 2021 and is sued in his individual and official capacity, and was at all times herein mentioned a policy setter and decision maker supervising members of the SVPD , and was employed by the VILLAGE under the direction of Defendants, VILLAGE .  CUMMINGS was at all times relevant to this complaint acting in furtherance of the scope of his employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the VILLAGE.

19.     DEFENDANTS JOHN DOES 1-10 (who are currently not known by name by Plaintiff, but who are known by Defendants) are sued in their individual and official capacities (hereinafter collectively referred to as "DEFENDANT POLICE OFFICERS" or "DEFENDANT OFFICERS") The DEFENDANT OFFICERS were at all times acting in furtherance of the scope of their employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the VILLAGE.

**FACTUAL ALLEGATIONS**

20.     Plaintiff was hired by the Southampton Village Police Department (hereinafter "the Department") on September 23, 2008, and is currently a Police Officer of the SOUTHAMPTON VILLAGE POLICE DEPARTMENT, which is an agency of the VILLAGE .

5

21.     Within the past four (4) years, Plaintiff has been discriminated against based on his race and color.

22.     As background, for the past thirteen (13)  years since he has been employed by the Department, Plaintiff has not received any evaluations nor does he have a negative employment history within the Department. Currently, the Department has approximately 32-33 employees; three (3) being African American. In the Department, there are five (5) detectives; two (2) of whom have been promoted to Detective within the past four years. Detectives Kimberleigh McMahon, a female Caucasian (hereinafter "Detective McMahon" or "McMahon"), and Michael Horstman, a male Caucasian, were both promoted to Detective after being placed in the East End Drug Task Force (hereinafter "E.E.D.T.F." or "task force").

23.   The Department's policy regarding Promotions, under "Procedures" subdivision ( c) states:

> It Shall be the policy of this department that when an opening for the position of detective occurs, or it is created:
>
> 1)     It will be understood that all eligible officer are interested in this position.
>
> 2)     Eligible officers are those full time police officers who do not hold the rank of Police Sergeant or above.
>
> 3)     Determination will be based on officer's performance and be non-discriminatory. The Chief will weigh the following elements in making recommendation for promotion to the rank of Detective:
>
> > a.     The officer's performance over  time as expressed by all prior performance evaluations taken as a whole.
> >
> > b.     recommendations from the officers' supervisors
> >
> > c.     review of the officer's work product

6

      d.     ranking on the current or recent past civil service promotional lists for position that an officer may be eligible for promotion to

      e.     officer seniority.

24.     Completion of over eighteen (18) months in the E.E.D.T.F. constitutes a police officer being automatically promoted to Detective. This means that an officer may complete eighteen (18) months and one (1) day to satisfy the suggested time frame on the task force to be promoted. One (1) Southampton Village Police Officer is placed on the E.E.D.T.F. for eighteen (18) months and a day at a time unless removed beforehand. As such, a police officer is not required to complete the full eighteen (18) months and a day on the task force in order to be granted a promotion to Detective. As such, a promotion to Detective can occur upon completion of over eighteen (18) months in the task force or by being granted said promotion by the Chief of Police.

25.     On September 9, 2015, Plaintiff started E.E.D.T.F. and was promised by Chief, Thomas Cummings (hereinafter "Chief Cummings"), that he would be promoted to Detective upon completion of an excess of an eighteen (18) month tenure on the task force. During this time, Plaintiff started and completed Basic Criminal Investigation (hereinafter "B.C.I.") school during the first week of March 2017. On his first day of B.C.I., Detective Sergeant Herman Lamison called Plaintiff and congratulated him; stating that Plaintiff was going to be promoted to Detective. Detective Sergeant Herman Lamison had received this information from Chief Cummings in a supervisors meeting.

26.     Plaintiff was the only African American police officer on E.E.D.T.F. from Southampton Village Police Department.

27.     Subsequently, on March 9, 2017, exactly eighteen (18) months after starting the task

force, Chief Cummings removed Plaintiff from the E.E.D.T.F. Thereby eliminating his possibility of automatic promotion to Detective.

28.     Chief Cummings told Plaintiff that he sought out but did not find anyone to replace Plaintiff for what would have been his last day on the task force, so that Plaintiff's eighteen (18) months and a day fulfillment on the task force would have been satisfied. Plaintiff later learned that Detective Steve Rios was available to fill Plaintiff's role on the task force for what should have been his last day had Chief Cummings not taken Plaintiff off of the task force one day shy of eighteen (18) months and a day. Chief Cummings in fact never asked Detective Steve Rios to replace Plaintiff.

29.     Because Chief Cummings removed Plaintiff from the E.E.D.T.F., and alleged that he could not find someone to replace Plaintiff for his last day, Plaintiff was unable to complete over eighteen (18) months on the task force, which precluded Plaintiff from an automatic promotion.

30.     Of all seven (7) police officers that were on the task force since Plaintiff has been employed by SVPD, Plaintiff was the only officer that was not promoted to a higher rank. The other officers who did get that promotion were all Caucasian.

31.     Upon Plaintiff's removal from E.E.D.T.F., Plaintiff conducted standard police patrol until he was assigned to the Community Response Unit (hereinafter "C.R.U.") where Plaintiff made arrests engaged in quality of life activity that effects the community. C.R.U., like the task force, also gives police officers opportunity for promotion.

32.     In C.R.U., officers usually work in pairs. Plaintiff worked with Police Officer Lee Pulliam, a Caucasian male. Two other police officers at the time, Kimberleigh McMahon and James Moore, were another pair in C.R.U. during the same time that Plaintiff was in that unit.

33.     James Moore, a male Caucasian, was in the E.E.D.T.F. on or about January of 2014. James Moore, was then placed in a position in the Canine unit, which comes with a salary increase

and chart days. Chart days are considered additional days off in addition to having vacation days, personal days, and or sick days.

34.     During his time in C.R.U., Plaintiff made twenty (20) arrests between June and September of 2017 whereas Detective McMahon made only two (2) arrest between April and September of 2017.

DETECTIVE KIMBERLEIGH McMAHON

35.     Detective McMahon, also known as Kimberleigh Radigan, who has been employed with the Department for approximately sixteen (16) years, was on the E.E.D.T.F. on or about May of 2012 Chief Cummings instead removed her from the task force and placed her as a School Resource Officer (hereinafter "S.R.O."). She also completed B.C.I. during the first week of March of 2017. Detective McMahon too, did not complete over eighteen (18) months of the task force. Subsequently however, on June 14, 2018, McMahon was promoted from S.R.O. to Detective.

36.     Kimberleigh McMahon was appointed as S.R.O. at all schools in Southampton.

37.     While on duty as a S.R.O., McMahon confronted a teacher who was employed at the school where McMahon was on duty, alleging that the teacher was having an affair with her husband. Detective Sergeant Herman Lamison, who was the school  liaison, relayed said incident to Chief Cummings. Upon information and belief, the teacher attempted to file a complaint. Upon information and belief Chief Cummings stated that the situation was not a big deal.

38.     Detective McMahon, unlike Plaintiff, has a negative employment history and has been reprimanded for falsifying police documents. On November 16, 2005, Detective McMahon, who at the time was a police officer assigned to the midnight shift, was sent home by her immediate supervisor for appearing unduly tired. She then falsified a Department Prisoner Activity Log for the shift as though she was present, alleging that she completed tasks that she did not complete because

9

she had been sent home.

39.     On August 9, 2006, Chief Cummings, who was Captain at the time, witnessed Chief William Wilson, Jr., issue a Command Discipline to McMahon, regarding the November 2005 incident. According to the Command Discipline, Detective McMahon's conduct was unlawful and inappropriate and a violation of the Rules of Conduct of the Southampton Village Police Department.

40.     This Command Discipline alone should have served as a reason for then Officer McMahon, now Detective McMahon not to have been promoted over Mr. Proctor.

41.     In the years of 2013 and 2014 when a sergeant position became available, Chief Cummings said that he would not promote P.O. McMahon to sergeant because of her history. However, on June 14, 2018, Chief Cummings promoted P.O. McMahon to Detective, who at the time was still a S.R.O.

42.     Sergeant Dave Dorchak told Plaintiff that when he asked Chief Cummings why Detective McMahon was promoted rather than Plaintiff, Chief Cummings stated that he did not want Detective McMahon to file suit against the Department.

43.     It became widely known throughout the Southampton Village Police Department that Officer McMahon did not perform her duties well as a School Resource Officer ("SRO"). Upon information and belief there were numerous complaints put forth about Officer McMahon's performance as an SRO from civilians. Upon information and belief, various Southampton School District employees expressed that Officer McMahon's conduct was improper in numerous instances during her time as SRO. Specifically, civilians complained that Officer McMahon was abrasive and did not know how to diffuse a situation. Contrarily, Officer McMahon was known to inappropriately heighten a situation.

10

44.     Officer McMahon's pugnacious attitude came to a head when while on duty as an SRO she purposefully tracked down a Southampton District Elementary School teacher, Kristin Berkoski,  in her classroom and engaged in a verbal altercation with Ms. Berkoski. This matter was complained of to Detective Sergeant Herman Lamison. Unfortunately, due to the disparate actions of the Department it is questionable whether these complaints were ever investigated.  It is well known that Chief Cummings knew of this incident, along with the several members of the Southampton Police Department, and numerous employees of the Southampton School District.

45.     Upon information and belief Detective Sergeant Herman Lamison, who is the liaison between the Southampton School District and the Southampton Police Department was told about this incident involving Officer McMahon against a teacher. Detective Sergeant Herman Lamison relayed all information given to him regarding said incident to Chief Cummings. In sum and substance Chief Cummings responded to Detective Sergeant Herman Lamison that he already knew of the incident.

46.     Upon information and belief Chief Cummings did not proceed to take any action in investigating this event.  The failure to take any action would be consistent with Plaintiff's assertion of disparate treatment which is part of the instant Complaint.  The decision to essentially look the other way for Officer McMahon provided her opportunities denied to Plaintiff.

47.     Furthermore, during Officer McMahon's time as an SRO, she also engaged in disputes with the other members of the school staff. It was due to the numerous disagreements with Officer McMahon that Officer McMahon was taken out of the SRO position. The new SRO at the Southampton School District was Police Officer Tiffany Lubold. McMahon's removal after these concerns  should have served as a bar to her promotion, especially when compared to Plaintiff.

48.     While Officer McMahon had approximately 3 ½ years seniority over Plaintiff, seniority alone does not warrant a promotion when one's performance is poor, substandard, and is in stark contrast to the reputable performance of Plaintiff. Therefore, Officer McMahon's "seniority" in the Department should have been inconsequential when deciding whether she should have been promoted considering that her performance is widely known in the Department as being subpar to that of Plaintiff's.

MICHAEL HORSTMAN

49.     Michael Horstman is another former police officer, now detective, who has been employed with the Department for approximately sixteen (16) years. Michael Horstman was promoted to Detective on March 20, 2019, after being placed on the E.E.D.T.F. Prior to Michael Horstman being promoted, he was involved in a dispute with the Administration Department of the Southampton Village Police Department. In response to the dispute with Chief Cummings, Michael Horstman was placed on the night shift as a punishment, where Michael Horstman stated to fellow officers that he was going to "shut it down", which meant that he would not write tickets or make arrests unless they were mandated. Thereafter, Chief Cummings placed Horstman on the E.E.D.T.F.

50.     When Michael Horstman was placed on the E.E.D.T.F. he was permitted to complete over eighteen (18) months on the task force; thus, granting him the opportunity to be promoted to Detective.

51.     In addition, for the duration of 2017, Plaintiff issued 210 citations while Michael Horstman issued only forty (40) citations. Michael Horstman also only made nine (9) arrests for the entire year of 2017 whereas Plaintiff made twenty (20) arrests in only four (4) months. It was clear that Plaintiff was being treated differently in that a Caucasian police officer with approximately the same time on the job as Plaintiff, with less than half as many arrest as Plaintiff, and would not only

12

be chosen for the task force, but then be promoted to Detective because he was Caucasian.

52.     Officer Horstman exhibited performance that was substandard in comparison to Mr. Proctor's. Therefore, Officer Horstman should not have been rewarded by being promoted. Officer Horstman did not deserve the promotion as it was widely known that Officer Horstman out of spite to the Administration did the very bare minimum as an Officer.  In fact, it was due to Officer Horstman's actions he was placed on night shift

53.     Michael Horstman, who has been involved in a series of disputes with the Administration Department, received a promotion while Plaintiff, a more qualified police officer for the task, has been overlooked.

54.     Similarly, when compared to Detective McMahon, Plaintiff has maintained a higher level of performance than she; yet, Plaintiff was passed over.

55.     Outside of his superior performance in the Department, the only other factor that noticeably separates Plaintiff  from not only Detectives McMahon and Horstman, but rather all of the other police officers that he worked with on the E.E.D.T.F., who were also promoted, is that Plaintiff is a Black -African American.

56.     Since these acts have occurred, Plaintiff has  continued to enhance his knowledge and credentials. Plaintiff has also maintained a solid performance within the Department and completed Field Training School at the Suffolk County Police Department Academy as of April 12, 2019.

57.     While Plaintiff firmly believes that Southampton Village Police Department and the Village of Southampton is engaging in discriminatory actions against him by refusing to give him a promotion as a consequence of his race and color, Plaintiff has still continued to act as a professional and perform his tasks with due diligence and dedication.

58.     Defendants cannot deny that CUMMINGS told Proctor he anticipated Proctor would perform well at the task force, be requested to stay, and would receive an automatic appointment. Nor can Defendants deny that CUMMINGS shared his expectations with Detective Sergeant Lamison at a supervisor's meeting. Nothing was ever expressed or revealed to Plaintiff which informed him that he fell short of these expectations.

59.     Plaintiff was not required to complete the 18 month and 1 day time period on the EEDTF as the only avenue in order to become a Detective. A promotion to the position and rank of Detective can also come directly from a recommendation by the Chief to the Village for said promotion to take place.

60.     This is in fact what occurred with Officer McMahon. She was not automatically promoted as she never completed over 18 months on the EEDTF. McMahon was promoted to Detective over four years after her time in EEDTF. Clearly at that time a Detective position became open and instead of Officer McMahon being promoted, Plaintiff should have been promoted.

61.     No fewer that six people, who like Plaintiff served on the EEDTF, have been elevated and/or promoted. They are:

1.      Sue Hurteau, who was automatically designated to the position of Detective in accordance to New York Civil Service Law §58(4)(c)(ii), a Caucasian female;

2.      Steven Kellis promoted to Sergeant after he was removed from his tenure on the task force, a Caucasian male;

3.      Steve Rios was promoted to Detective after he was removed from his tenure on the task force, a light-skinned Italian and Hispanic male;

4.      Kimberleigh McMahon was promoted to SRO after her removal on the task force, then later made Detective, a Caucasian female;

5.      James Moore, promoted to a Canine Officer, a Caucasian male; and

14

6.      Michael Horstman, who was automatically designated to the position of Detective in accordance to New York Civil Service Law §58(4)(c)(ii), a Caucasian male.

62.     Plaintiff was passed over for every promotion which occurred as it is assumed and "understood that all eligible officer are interested in this position; and eligible officers are those full time police officers who do not hold the rank of Police Sergeant or above." Therefore, according to Defendants' very own procedures, Plaintiff did not need to apply for the position of Detective. Any argument to the contrary must fail.

63.     The act of repeatedly, through the promotions of others – including Officer McMahon to Detective, and Officer Horstman to Detective, and others – is humiliating and embarrassing when the whole Police Department was aware, and many acknowledged, that Plaintiff was the better performing officer yet has not been selected for promotion because he is black.

64.     Any person would subjectively perceive it to be abusive, especially following on the heels of the disparate treatment Plaintiff was already subjected to at the hands of CUMMINGS, VILLAGE and SVPD when he was removed from the EEDTF one day shy of being automatically promoted to Detective.

65.     Following Plaintiff's filing of his Complaint with the NYSDHR on June 2, 2019, the VILLAGE Board and CUMMINGS, refused to promote Plaintiff in a clear act of retaliation, and have continued with that retaliation, by passing over Plaintiff despite the fact that promotions have come to be available for him. Those were all given to Caucasian officers.

66.     The Department's failure to promote Plaintiff  has caused him financial loss, embarrassment, and humiliation.

67.     The hostile treatment and callous attitude to which he was and continues to be subjected has been documented by the Mayor of the Village who has stated, that he "was the only member of the Board who wanted to promote Officer Proctor, and I was appalled by my colleagues who did not want to promote him."

68.     This clear retaliation taken against Plaintiff is a further attempt to create an unwelcome work environment for him.

69.     The wrongful treatment to which Plaintiff has been subjected and the harm caused by that treatment is on going.

## AS AND FOR A FIRST COUNT
## TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e

70.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 69 inclusive of this Complaint, with the same force and effect as though fully set forth herein.

71.     Defendant VILLAGE, through their agents and employees, discriminated against the Plaintiff in his employment based on Plaintiff's race and color, and retaliated against him for opposing discrimination,  in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

72.     Plaintiff is and continues to be qualified for each and every position into which he sought to be promoted.  He as been the victim of discrimination based on his race and color in no fewer than six (6) different promotional positions or transfers positions for which he was qualified.

73.     Plaintiff sought to be promoted into assignments and units, however he was denied those positions and Caucasian persons with lesser qualifications were afforded those slots.

74.     The act of repeatedly promoting others including:

1.      Sue Hurteau, who was automatically designated to the position of Detective in accordance to New York Civil Service Law §58(4)(c)(ii), a Caucasian female (now acting Chief);

2.      Steven Kellis promoted to Sergeant after he was removed from his tenure on the task force, a Caucasian male;

3.      Steve Rios was promoted to Detective after he was removed from his tenure on the task force, a light-skinned Italian and Hispanic male;

4.      Kimberleigh McMahon was promoted to SRO after her removal on the task force, then later made Detective, a Caucasian female;

5.      James Moore, promoted to a Canine Officer, a Caucasian male; and

6.      Michael Horstman, who was automatically designated to the position of Detective in accordance to New York Civil Service Law §58(4)(c)(ii), a Caucasian male.

is humiliating and embarrassing when the entire Police Department is aware that Mr. Proctor is the better performing officer and has not been selected for Promotion because he is Black African-American and not Caucasian.

75.     Plaintiff has been subjected to differential treatment based on his race and color and has been the victim of retaliation for his opposition to discrimination and wrongful treatment of persons.

76.     As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income.   Plaintiff suffered loss of other employment benefits and continues to suffer distress, humiliation, embarrassment as a result of the differential and discriminatory treatment and hostile work environment.

77.     As a direct result of aforementioned acts, Plaintiff has been deprived of his rights, deprived of his freedoms, physically, and mentally harmed.  Plaintiff has been forced to seek redress in the New York State Division of Human Rights, and now the courts rather than capitulating to the previously mentioned abuse, ridicule, and discrimination.

78.     Plaintiff has been subjected to humiliation, ignominy, loss of title/status, untimely removal from his position, loss of career advancement, and removal from his assignment.  As a result, Plaintiff has experienced a diminution in his quality of life.

79.     Plaintiff was refused status, transfer, benefits, resources and trust awarded to other employees who were similarly situated, excepting the fact that they are not Black.  Were Plaintiff a white person, rather than a Black African-American man, he would not have been subjected to the adverse employment actions, denial of promotions, denials of  transfer, subjected to lower paying work assignments,  lesser work titles,  falsely advised that he had no basis to complain, retaliated against, and subjected to the intense abuse and humiliation that continues.

80.     Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/ injuries due to VILLAGE's unlawful discrimination.

81.     Further, once Plaintiff protested such unequal and unlawful treatment, Defendants VILLAGE and SVPD through their agents, employees and servants, retaliated against him by creating and continuing his harmful placement, denying him advancement and promoting less qualified Caucasian persons over him and, subjecting Plaintiff to more and greater financial and emotional harm.

82.     As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of longevity, loss of status,

loss of opportunities, distress, humiliation, embarrassment, emotional trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

83.     That by reason of the foregoing, Plaintiff Proctor is now suffering and will continue to suffer irreparable injury and monetary damages has been subjected to economic losses and emotional injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as costs and attorney's fees.

## AS AND FOR THE SECOND COUNT
### 42 U.S.C. § 2000(d) (Title VI)

84.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 83 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

85.     Defendant VILLAGE through its agents and employees, discriminated against Plaintiff based on race, color and ethnicity while receiving federal assistance which violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq.

86.     Defendant VILLAGE, through their agents and employees, discriminated against the Plaintiff in his employment based on Plaintiff's race, color, and retaliated against him for opposing discrimination.   In violation of his rights, Plaintiff was excluded from nondiscriminatory employment in VILLAGE.   Plaintiff was denied the opportunity to obtain and hold different positions in his employment and receive the additional pay, options, opportunities and benefits he would have earned during his employment in those positions. Plaintiff was personally discriminated against and retaliated against by Defendant VILLAGE through their agents and employees  based on his race and color.

19

87.     The Defendant VILLAGE and its members created a hostile work environment against Plaintiff through intentional acts of discrimination and retaliation. The hostile work environment caused Plaintiff to suffer abuse, harassment, embarrassment, and suffering based on his race and color. Other white employees were not subjected to the hostile work environment to which the Plaintiff was subjected, instead they were provided promotions, and transfers which allowed them to advance themselves and their careers.

88.     As a direct result of said Defendants' acts, Plaintiff has suffered and continues to suffer loss of status, opportunities, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to his reputation. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of five million ($5,000,000) dollars as well as costs and attorney's fees.

**AS AND FOR THE THIRD COUNT**
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT EQUAL PROTECTION**
**DISCRIMINATION BASED ON RACE, COLOR,**
**AND RETALIATION**

89.     The Plaintiff repeats, reiterates, and re-alleges each allegation contained in paragraphs 1 through 88 of this Complaint with the same force and effect as though fully set forth herein.

90.     Defendants CUMMINGS, and JOHN DOES 1-10, discriminated against the Plaintiff in his employment based on Plaintiff's race and color in violation of the Fourteenth Amendment to the United States Constitution.

91.     The Defendants CUMMINGS, and JOHN DOES 1-10 collectively and each one of them individually have engaged in actions and abuses which violate and deny Plaintiff his rights as

provided under the Fourteenth Amendment of the United Stated Constitution by violating his Fourteenth Amendment right of equal protection and due process in discriminating against Plaintiff because of and account of his race and color.

92.     Defendants' infringement upon and violation of Plaintiff's rights protected under the Fourteenth Amendment of the United States Constitution was, and is, intended to place a chilling effect upon the exercise of such rights by Plaintiff and other persons as is their right as provided by the U.S. Constitution to exercise such rights.

93.     The Defendants CUMMINGS, and JOHN DOES 1-10 made decisions to discriminate against, and violate the rights of Plaintiff individually and in collusion with each other.

94.     Defendants CUMMINGS, and JOHN DOES 1-10, as state actors, acting under color of law, proximately caused the deprivation of Plaintiff's federally protected rights, secured by the Fourteenth Amendment, as well as federal legislation, such as Title VI, Title VII and §1981.

95.     Specifically, CUMMINGS, and JOHN DOES 1-10 all authorized this action and took no action to prevent it and deprived Plaintiff Proctor of the equal protection of the law, refused to promote him, denied him access to automatic promotion, and transferred him, and also failed to provide protections against harm; denied him promotions and titles because of him being a Black African-American man; denied Plaintiff the opportunity to remain one day longer in a position which would result in a promotion, knowing that doing so was causing him irreparable harm; and commenced to engage in acts of retaliation against Plaintiff  in violation of the Fourteenth Amendment, §1981, Title VI and Title VII.

96.     Plaintiff was also reassigned for the express purpose of preventing his promotion without due process because of his race and color in violation of the Fourteenth Amendment.

97.     Knowing that they were engaging in wrongful discrimination and retaliation against Plaintiff, CUMMINGS, and JOHN DOES 1-10 each agreed to continue the abusive and wrongful treatment against him, and each failed to prevent those wrongful actions and failed to intervene to stop them from happening or to stop them from continuing.

98.     As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

99.     That by reason of the foregoing, Plaintiff Proctor has been subjected to economic losses and psychic injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

### AS AND FOR THE FOURTH COUNT
### 42 U.S.C. § 1983 – MUNICIPAL VIOLATIONS

100.     The Plaintiff repeats, reiterates, and re-alleges each allegation contained in paragraphs 1 through 99 of this Complaint with the same force and effect as though fully set forth herein.

101.     According to a report commissioned by the VILLAGE IN 2020 entitled SOUTHAMPTON VILLAGE POLICE DEPARTMENT OPERATIONAL ANALYSIS, "Diversity- A review of the demographics of the SVPD clearly illustrates the need to diversify their workforce. The department should increase its recruitment, outreach, diversity and inclusion efforts to bring more Hispanics, African Americans, Shinnecock Nation and women into the SVPD. In addition, the department should not rely so heavily on the Suffolk County Civil Service Department for its recruitment needs."

102.    The Reform and Reinvention Collaborative Committee Recommendation to Board

of Trustee of Southampton Village, which followed the June 12, 2020 NYS Executive Order No-203

requiring local governments in New York State to adopt a policing reform plan by April 01, 2021

resulted in its number one, of several, Recommendations Based on Feedback Received to be

Recommendation 1:

> Increase the number of minority members of the Police Department in all job titles
> and particularly increase Hispanic membership within the Police Department.
>
> Action Plan: Increase outreach to the Hispanic community and other minority
> communities through stakeholders and other community contacts and in order to
> encourage minority community members to take advantage of employment
> opportunities that exist within the Police Department and then to provide information
> on how to apply for and be hired for the job openings that are available in the Police
> Department.

103.    The current acting Chief of the Department is Sue Hurteau, who was automatically

designated to the position of Detective in accordance to New York Civil Service Law §58(4)(c)(ii),

and is a Caucasian female.  Ms. Hurteau is one of this persons who was treated differently than

Plaintiff and promoted to Detective and now serves as the highest ranking acting member of the

SVPD.  Had Plaintiff been afforded the opportunity provided to Ms. Hurteau and not have been

passed over, it is a very clear possibility that he would have been able to advance himself to the level

where he could serve as the acting Chief instead of Ms. Hurteau.

104.    However, due the discriminatory practices, patterns and decisions which set policy

Plaintiff has been denied the same opportunity to advance and achieve as similarly situated

Caucasian members of the SVPD

105.    Defendants VILLAGE and DEPARTMENT, acting under color of law, and through

their employees, servants, agents and designees, have engaged in a policy, custom, and/or condoned

a longstanding practice, which has deprived Plaintiff and other female employees of rights, privileges and immunities secured by the Fourteenth Amendment, Title VI, Title VII, and the 42 U.S.C. §1981. These actions were, and continue to be, condoned by VILLAGE policy makers, including but not limited to, Defendant VILLAGE through the refusal of its Board to promote Plaintiff, Defendant DEPARTMENT, CUMMINGS and JOHN DOES 1-10.

106.    Defendants, intentionally and knowingly, as an act of discrimination based on race, and color have engaged in a practice and pattern in failing to treat Black African-American officers fairly and in a non-discriminatory way with regard to hiring, promotions and transfers, such as the Plaintiff, within the DEPARTMENT because of their race and color.  Defendants also engaged in a pattern and practice of retaliating against officers who oppose discriminatory, abusive, violative treatment, especially Black African-American officers like Plaintiff for his protestations to race, and color based discrimination.

107.    Defendants VILLAGE and DEPARTMENT were further aware of the systematic practice of unlawful race, color and ethnicity based discrimination within the DEPARTMENT, yet failed to address, remedy, or change said systematic practices, which work to the detriment of Plaintiff Serrata and other persons situated similarly.

108.    Defendants, intentionally and knowingly materially altered the terms and conditions of Plaintiff's employment in retaliation for protesting discriminatory practices within the DEPARTMENT.  Defendants VILLAGE and DEPARTMENT were further aware of the systematic practices of unlawful race, color and ethnicity discrimination within the DEPARTMENT, yet failed to address, remedy, or change said discriminatory practices.

24

109.     Mr. Edmund Harnett and Mr. James E. McCabe were tasked with a threefold project by the Village of Southampton regarding the Southampton Village Police Department (SVPD) as follows: 1) conduct a review of key operational and administrative policies, procedures and activities with an eye towards best practices; 2) analyze the SVPD budget and conduct a resource allocation study; 3) review and comment on the SVPD Reform Committee Report recently submitted in accordance with the Governor's Executive Order #203 entitled "New York State Police Reform and Reinvention Collaborative."

110.     As part of this analysis, the VILLAGE was found to have little oversight with regard to the SVPD on a number of levels.

111.     The Village of Southampton has a practice and policy of failing to supervise, oversee, direct, communicate with and manage the SVPD and the Chief of Police.

112.     The VILLAGE does not and has not had, or exercised full oversight and control of the SVPD, nor has the VILLAGE taken any steps to create a level of real accountability from the SVPD.

113.     While the Mayor is the Chief Executive of Southampton Village, the Mayor has been unable to impact SVPD to any degree which would make them accountable for their actions and failures on multiple levels including promotions, nondiscrimination and disparate treatment of persons like Plaintiff.   Within the VILLAGE and its structure, there has been no meaningful connection created or forged by the VILLAGE with the SVPD.

114.     By its own design, one of VILLAGE Trustees was to be designated as a liason between the Village and the SVPD.  According to the analysis done by Edmund Harnett and James E. McCabe of the SVPD, this position of liason is a "ceremonial position" and "not a substantive

one."

115.    This Trustee/Liason created by VILLAGE has no real authority, no ability to give direction and provide oversight over budget issues, promotions, hiring, expenditures, transfers, disciplines, diversity, personnel and internal equal employment issues within the SVPD.

116.    The failure and lack of oversight and supervision allowed for the SVPD and CUMMINGS to act with no regard for the rights of Plaintiff created and fostered a culture where discrimination, which became obvious to many employees, would go unchecked and without question.

117.    Further, when aware of any such complaints of discrimination, the VILLAGE and SVPD engaged in and continued a pattern, practice and custom of failing to recognize the complaint, failing to investigate those claims, including that of Plaintiff in this case.

118.    Defendants VILLAGE and DEPARTMENT failed to adequately train or supervise their upper-level supervisors; specifically, Defendants VILLAGE and DEPARTMENT failed to adequately train supervisors on discrimination laws, and failed to exercise adequate supervision over supervisors in order to ensure that discrimination laws were respected.

119.    VILLAGE and DEPARTMENT have engaged and continue to engage in hiring practices, promotion practices and providing of job opportunities which discriminate against Black persons.

120.    These discriminatory acts committed by Defendants VILLAGE and DEPARTMENT, and by CUMMINGS and JOHN DOES 1-10, who were responsible for policy decisions and the enforcement thereof, Plaintiff suffered, and continues to suffer, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, and embarrassment.

121.     Defendants' acts of ongoing race and color based discrimination were intended to subjugate Plaintiff Proctor. By so acting, Defendants have willfully violated the constitutional rights guaranteed to Plaintiff  Proctor and similarly situated persons by the Fourteenth Amendment.

122.     As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

123.     That by reason of the foregoing, Plaintiff Proctor has been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

## AS AND FOR THE FIFTH COUNT
## 42 U.S.C. § 1981

124.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 123 inclusive of this Complaint with the same force and effect as though herein fully set forth.

125.     The above discriminatory pattern and practice based on race and color by Defendant VILLAGE through their agents and employees violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

126.     As a direct and proximate result of said acts by VILLAGE, DEPARTMENT, and CUMMINGS and JOHN DOES 1-10, Plaintiff has suffered loss of employment and continues to suffer loss of income, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

127.     Because of Plaintiff's color,  race and ethnicity he has been subjected to different, disparate, and abusive  mistreatment as detailed above and has been treated differently than white individuals.

128.     As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

129.     That by reason of the foregoing, Plaintiff Serrata has been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

### AS AND FOR THE SIXTH COUNT
### NYS HUMAN RIGHTS LAW, EXECUTIVE LAW ART. 15 §§ 296 and 290 and SUFFOLK COUNTY HUMAN RIGHTS LAW FOR DISCRIMINATION AND RETALIATION AGAINST  VILLAGE, DEPARTMENT, and CUMMINGS and JOHN DOES 1-10

130.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 129 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

131.     As a direct and proximate result of said acts by VILLAGE, DEPARTMENT, and CUMMINGS and JOHN DOES 1-10, Plaintiff has suffered loss of employment and continues to suffer loss of income, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

132.    Plaintiff is, and continues to be, qualified for each and every position he as sought to be promoted into. He as been the victim of discrimination based on his race, color and ethnicity and retaliation in no fewer than six (6) different promotional positions or transfers for which he was qualified.

133.    Plaintiff sought to be promoted into assignments and units, however he was denied those positions and Caucasian persons with lesser qualifications were afforded those slots.

134.    The act of repeatedly bypassing Mr. Proctor, through the promotions and granting of benefits to others, including:

1.    Sue Hurteau, who was automatically designated to the position of Detective in accordance to New York Civil Service Law §58(4)(c)(ii), a Caucasian female (now acting Chief);

2.    Steven Kellis promoted to Sergeant after he was removed from his tenure on the task force, a Caucasian male;

3.    Steve Rios was promoted to Detective after he was removed from his tenure on the task force, a light-skinned Italian and Hispanic male;

4.    Kimberleigh McMahon was promoted to SRO after her removal on the task force, then later made Detective, a Caucasian female;

5.    James Moore, promoted to a Canine Officer, a Caucasian male; and

6.    Michael Horstman, who was automatically designated to the position of Detective in accordance to New York Civil Service Law §58(4)(c)(ii), a Caucasian male.

to higher or more beneficial ranks and titles is humiliating and embarrassing when the entire Police Department is aware that Mr. Proctor is the better performing officer and has not been selected for Promotion because he is a Black African-American man and not Caucasian.

135.    Plaintiff has been subjected to differential treatment based on his race and color and has been the victim of retaliation for his opposition to discrimination and wrongful treatment of himself.

136.    As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income.  Plaintiff suffered loss of other employment benefits and continues to suffer distress, humiliation, embarrassment as a result of the differential and discriminatory treatment and hostile work environment.

137.    As a direct result of aforementioned acts, Plaintiff has been deprived of his rights, deprived of his freedoms, physically and mentally harmed.  Plaintiff has been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, and discrimination.

138.    Plaintiff has been subjected to humiliation, ignominy, loss of title/status, loss of advancement, untimely removal from his position that would provide for automatic promotion, and removal from his assignment.  As a result, Plaintiff has experienced a diminution in his quality of life.

139.    Plaintiff was refused status, transfer, benefits, resources and trust awarded to other employees who were similarly situated, excepting the fact that they are not Black African-American. Were Plaintiff a white person, rather than a Black man, he would not have been subjected to the adverse employment actions, denial of promotions, denials of transfer, subjected to low paying work assignments, falsely advised that he had no basis to complain, and retaliated against and subjected to the intense abuse and humiliation that continues.

140.    Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/injuries due to VILLAGE, DEPARTMENT, and CUMMINGS and JOHN DOES 1-10's unlawful discrimination.

141.   Further, once Plaintiff protested such unequal and unlawful treatment, Defendants VILLAGE, DEPARTMENT, and CUMMINGS and JOHN DOES 1-10 through their agents, employees and servants, retaliated against him by creating and continuing his harmful placement, denying him advancement and not correcting the promotion of less qualified Caucasian persons over him and, subjecting Plaintiff to more and greater financial and emotional harm.

142.   As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of longevity, loss of status, loss of opportunities, distress, humiliation, embarrassment, emotional trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

143.   That by reason of the foregoing, Plaintiff Proctor is now suffering and will continue to suffer irreparable injury and monetary damages has been subjected to economic losses and emotional injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

Wherefore, based on the foregoing, Plaintiff requests judgment as follows:

a.   First Cause of Action: in excess of five million ($5,000,000.00) dollars as well as other damages, costs and attorney's fees.

b.   Second Cause of Action: in excess of five million ($5,000,000.00) dollars as well as other damages, costs and attorney's fees.

c.   Third Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.   Fourth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as other damages, costs and attorney's fees.

e.      Fifth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

f.      Sixth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

g.      Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) and other fee and costs statutes;

h.      A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

i.      Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

j.      An Order granting such other legal and equitable relief as the court deems just and proper.


**PLAINTIFF DEMANDS A TRIAL BY JURY**


Dated:  Hempstead, New York
        October 18, 2021

                        LAW OFFICES OF
                        FREDERICK K. BREWINGTON

                   By:  _____
                        FREDERICK K. BREWINGTON
                        *Attorneys for Plaintiff*
                        556 Peninsula Boulevard
                        Hempstead, New York  11550
                        (516) 489-6959

# EXHIBIT A

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Kareem Proctor**<br>**P.O. Box 1130**<br>**Southampton, NY 11969** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2019-04398** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(929) 506-5316** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒   Other *(briefly state)*        **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

July 30, 2021

Enclosures(s)

**Judy A. Keenan,**
**District Director**

*(Date Issued)*

cc:   **Attn: President/CEO**
**VILLAGE OF SOUTHAMPTON**
**23 Main Street**
**Southampton, NY 11968**

**Julissa Proano, Esq.**
**Brian S. Sokoloff, Esq.**